# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE APOTOSKY, | ) | CASE NO. 4:15-cv-1619 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is a dispositive motion filed by plaintiff Wayne Apotosky ("plaintiff" or "Apotosky"). (Doc. No. 47 ["P-MSJ"].) Rather than formally oppose this motion, defendants Federal Bureau of Investigation ("FBI") and Executive Office for United States Attorneys ("EOUSA") (together, "defendants"),[1] filed a cross-motion for summary judgment (Doc. No. 51 ["D-MSJ"]), supported by the Declaration of David M. Hardy[2] (Doc. No. 52-1[3] ["Hardy Decl."]).[4] Plaintiff filed a brief in opposition to defendant's motion, styled as a "Reply" (Doc. No. 53), and defendants filed their reply (Doc. No. 54). Without leave, plaintiff filed an additional reply (Doc.

---

[1] The United States of America is also named as a defendant. The relevant statute is clear, however, that the only proper party in a Freedom of Information Act/Privacy Act case is an "agency." *See* 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court … has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."). An "agency … includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]" 5 U.S.C. § 552(f)(1).

[2] Under 28 U.S.C. § 1746, unsworn declarations subscribed by the declarant as true under penalty of perjury, and dated, may be substituted for affidavits. The Hardy Declaration complies with these requirements.

[3] Due to technical difficulties with Hardy's originally-filed declaration (Doc. No. 51-2), it was refiled. Therefore, Doc. No. 52-1 replaces Doc. No. 51-2.

[4] Hardy is "the Section Chief of the Record/Information Dissemination Section ('RIDS'), Records Management Division ('RMD'), in Winchester, Virginia." (Hardy Decl. ¶ 1.) In this capacity, he "supervise[s] approximately 250 employees … whose collective mission is to effectively … respon[d] to requests for access to FBI records and information pursuant to the FOIA …." (*Id.* ¶ 2.)

No. 55), which the Court construes as a sur-reply.[5] For the reasons set forth herein, plaintiff's dispositive motion is **denied** and defendants' cross-motion for summary judgment is **granted.**

## I. PROCEDURAL BACKGROUND

On August 14, 2015, plaintiff, proceeding pro se, filed a complaint (styled as a "motion") (Doc. No. 1) under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). He later filed two more motions (Doc. Nos. 2, 8), which appeared to be attempts to amend his initial complaint. After leave was granted for plaintiff to proceed *in forma pauperis*, the case was referred to Magistrate Judge Kathleen Burke for pretrial supervision. On January 26, 2016, the magistrate judge directed plaintiff to file an amended complaint "setting forth all his claims in a single document." (Order, Doc. No. 20, at 101.)[6] Plaintiff timely complied, filing what he styled as a "superseding complaint." (Doc. No. 22.) Defendants filed their answer. (Doc. No. 24.)

The magistrate judge conducted the case management conference (*see* Minutes of Proceedings, Doc. No. 32) and two additional conferences (*see* Minute Orders, Doc. Nos. 41, 45), all of which plaintiff participated in by phone from the prison where he is incarcerated.[7]

On July 1, 2016, plaintiff filed his "Dispositive Motion" arguing that "the FBI has with held [sic] some but not all documents, that he requested via FOIA," specifically, "the forensic

---

[5] Since defendants have not moved to strike this document, the Court has considered it.

[6] All page number references are to the page identification number generated by the Court's electronic docketing system.

[7] According to the docket in the Western District of New York for Case No. 1:09-CR-00166, on October 23, 2009, plaintiff pleaded guilty to a two-count information charging possession of child pornography. He was sentenced to an aggregate term of imprisonment of 151 months and is currently housed at Elkton Federal Correctional Institution. It appears that the documents he sought by way of his FOIA request were all related to this conviction and the investigation that led to it. Some of the documents were subject to a sealing order; however, defendants' counsel in the instant case was apparently able to prevail upon the authorities in the New York district court to lift the sealing order, rendering 55 additional pages of records disclosable. (*See* D-MSJ at 253-55.)

reports to all computers that were sized [sic] in this action[ ] [and] the reports from the Credit Card Company that got the investigation started." (P-MSJ at 237.)

On August 12, 2016, defendants filed their cross-motion for summary judgment wherein they argue that "the undisputed facts show that the FBI and EOUSA have not improperly withheld documents and therefore Plaintiff cannot state a claim for relief pursuant to the FOIA." (D-MSJ at 253.)

## II. DISCUSSION

**A.     Legal Standards Applicable to FOIA Cases**

"Under the FOIA, each 'agency' upon 'any request' for records shall make the records 'promptly available to any person,' 5 U.S.C. § 552(a)(3)(A), unless one of nine specific exemptions applies, 5 U.S.C. § 552(b)(1)-(9)." *ACLU v. FBI*, 734 F.3d 460, 465 (6th Cir. 2013). "In accordance with the FOIA's 'dominant objective' of disclosure, these exemptions are to be 'narrowly construed.'" *Id.* (quoting *Akron Standard Div. of Eagle-Picher Indus., Inc. v. Donovan*, 780 F.2d 568, 571 (6th Cir. 1986)).

"The FOIA confers jurisdiction on the district courts to enjoin an agency from withholding records and to order the production of any agency records improperly withheld." *Vaughn v. United States*, 936 F.3d 862, 866 (6th Cir. 1991) (citing 5 U.S.C. § 552(a)(4)(B)). "The Supreme Court has held that under this provision, 'federal jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records.'" *Id.* (quoting *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980)) (internal quotation marks omitted)). The burden is on the agency to demonstrate that the records sought are subject to an exemption. *Id.* Courts review agency decisions to deny FOIA requests under the *de novo* standard of review. 5 U.S.C. § 552(a)(4)(B).

"Procedurally, district courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) (citing *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir.1994)[8]). "To prevail on summary judgment, the [agency] must show that it made a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information and that any withholding of materials was authorized within a statutory exemption." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (internal quotation marks and citation omitted).

"The courts have developed several methods to allow agencies to sustain their burden of establishing exemptions without compromising the secrecy of the information in the process." *Vaughn*, 936 F.2d at 866. "The court may examine the documents *in camera*. However, [the Sixth Circuit] has observed that such reviews 'are not favored because they are burdensome and are conducted without the benefit of an adversary proceeding.'" *Id*. (quoting *Osborn v. I.R.S.*, 754 F.2d 195, 197 (6th Cir. 1985) (further internal quotation marks and citation omitted)).

Another means developed is "the use of a 'Vaughn index,' a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions from disclosure under the Act." *Rugiero*, 257 F.3d at 544 (citing *Jones*, 41 F.3d at 241-42; *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)). "Ordinarily, an agency will offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent

---

[8] In *Jones*, the court noted the "peculiar posture" of FOIA cases that are typically decided on summary judgment, without discovery, and at a time when "only the agency truly knows the content of the withheld material." *Jones*, 41 F.3d at 242 (citation omitted).

4

evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones*, 41 F.3d at 242-43.) "Evidence of bad faith on the part of the agency can overcome this presumption[.]" *Rugiero*, 257 F.3d at 544. "If bad faith … is shown … a district court may conduct an *in camera* review of any documents withheld or redacted." *Rimmer*, 700 F.3d at 255 (citations omitted).

"Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence." *Rugiero*, 257 F.3d at 544 (citations omitted). "If the [agency] fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the [agency's] position." *Id*. (internal quotation marks and citations omitted).

**B.     The Record Evidence**

In support of their motion for summary judgment, defendants submitted the Declaration of David Hardy, which is virtually unrefuted by plaintiff.[9] Due to the nature of his official duties, Hardy is aware of the FBI's handling of plaintiff's FOIA requests for records from his investigative file. (Hardy Decl. ¶ 3.) In fact, the Court observes that Hardy's summary of plaintiff's FOIA requests, referenced below, is significantly more complete than plaintiff's own summary and documentation.[10]

Plaintiff submitted a FOIA request to the FBI by letter dated March 4, 2013, seeking "all information the FBI have [sic] on me from 1995 to 2013." (Hardy Decl. ¶ 5 and Ex. A at 378.) By letter dated March 13, 2013, the FBI acknowledged receipt of the request and assigned it Request

---

[9] A second Hardy Declaration was filed in support of defendants' reply brief. (*See* Doc. No. 54-1 ["Hardy Decl. 2"].)

[10] Throughout his declaration, Hardy more broadly identifies plaintiff's requests as "FOIPA requests," referring to both FOIA and the Privacy Act, 5 U.S.C. § 552a. Since plaintiff's complaint and superseding complaint refer only to FOIA, the Court will adhere to that description of the requests.

Number 1210089. The FBI also advised plaintiff that the request lacked sufficient identifying information to allow a search of the FBI's Central Records System ("CRS"), and enclosed an identity affidavit for plaintiff to complete and return. (*Id.* ¶ 6 and Ex. B at 381-82.)

By letter postmarked March 20, 2013, plaintiff returned the completed identity affidavit. (*Id.* ¶ 7 and Ex. C.) After first advising plaintiff of its receipt of his request (*id.* ¶ 8 and Ex. D), by subsequent letter dated April 22, 2013, the FBI further advised him that it had located approximately 1000 pages of records potentially responsive to his request. The letter further advised that duplication of the pages, if all turned out to be disclosable under FOIA, would cost $90.00 for hard copies and $20.00 for release on a CD. The letter sought plaintiff's confirmation of his format decision and his commitment to pay. (*Id.* ¶ 9 and Ex. E.)[11]

By letter dated April 29, 2013, plaintiff advised the FBI that he wanted the documents in paper form, and he requested a waiver of fees due to his incarceration and indigent status. (*Id.* ¶ 10 and Ex. F.) The FBI responded by letter of May 22, 2013, advising that a requester's inability to pay is not a statutory basis for granting a fee waiver and that plaintiff did not otherwise qualify for the waiver. (*Id.* ¶ 11 and Ex. G.)

Plaintiff then wrote the FBI on May 30, 2013, indicating his decision to change his records request to a smaller number of items. He narrowed his request to four specific records from his investigative file: (1) search warrant for 640 Fulton Street dated June 8, 2007; (2) search warrant for search of computers on a date specified as "unknown"; (3) arrest warrant for Wayne Apotosky dated October 2008; and (4) report from search warrant for computers. (*Id.* ¶ 12 and Ex. H.)

---

[11] This Ex. E is also attached to the complaint as Ex. 3.

Then, by letter dated June 13, 2013, plaintiff informed the FBI he was requesting "TRUE AND CORRECT copies" of four additional records from his investigative file: (1) administrative subpoena to One Communications regarding a specified IP address on December 12, 2006; (2) the subpoena return from One Communications regarding said IP address; (3) report from One Communications regarding said IP address on March 26, 2007; and (4) copies of all photographs, images or other visual depictions of all computer equipment found in the residence at 640 Fulton Street on June 8, 2007. (*Id.* ¶ 13 and Ex. I at 402, capitalization in original.)

Plaintiff requested even more records by letter dated August 2, 2013, wherein he sought copies of: (1) a May 10, 2007 letter from U.S. Postal Inspector Martin Arthur for 640 Fulton Street; (2) report on December 11, 2006 from P2P Program Limewire from FBI Agent Jenson concerning a keyword search for files of the Gnutella P2P network from the same IP address as in the June 13th request; (3) report and information from FBI Agent Jenson concerning 24 files from that IP address; and (4) all file names and file descriptions of 24 files FBI Agent Jenson downloaded from the IP address on December 11, 2016 between 8:16 p.m. and 9:02 p.m. (*Id.* ¶ 14 and Ex. J at 406, 407.)

On January 13, 2014, plaintiff wrote the FBI additionally requesting copies of the following from his investigative file: (1) the search warrant for 640 Fulton Street dated June 26, 2007; and (2) the forensic report from the New York Regional Computer Forensics Laboratory for a Compaq NX9600 and the search warrant for said computer. (*Id.* ¶ 15 and Ex. K at 411.)

Over a cover letter dated March 31, 2014, the FBI made its release of records to plaintiff. The agency advised plaintiff that it had reviewed nine (9) pages of records and was releasing three (3) pages in full or part, with certain information withheld pursuant to FOIA Exemptions (b)(6),

(b)(7)(C), and (b)(7)(E), an explanation of which was included. The FBI further advised plaintiff that he could appeal its determination and the method for doing so. (*Id.* ¶ 16 and Ex. L at 414-16.)

By letter dated January 14, 2015, plaintiff requested copies of the following from his investigative file: (1) 302s[12] for December 11, 2006; (2) 302s for June 8, 2007; (3) 302s for four specific computers; and (4) 302s for plaintiff's credit cards used on "websites in question." He again requested that the fees be waived. (*Id.* ¶ 17 and Ex. M. at 418.)[13]

By letter dated March 18, 2015, the FBI acknowledged the request and assigned it Request Number 1210089-001. (*Id.* ¶ 18 and Ex. N.)[14] This letter further advised that the FBI was searching the indices to the CRS for records responsive to plaintiff's request. The letter indicated that plaintiff's request for waiver of fees was under consideration, with a decision to follow. (*Id.*)

On August 14, 2015, plaintiff filed his complaint, commencing this action.

By letter dated November 18, 2015, the FBI made its release of records in response to Request Number 1210089-001, advising that 119 pages of records had been reviewed and 25 pages were being released in full or part, with certain information withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D),[15] and (b)(7)(E).[16] The letter further advised that some withheld records

---

[12] "FBI 302s" is a reference to FD-302, a form "used by FBI agents 'to record information which they obtain through witness interviews, … grand jury subpoenas, proffer agreements and immunity statements, and from other federal agencies.'" *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1089 (D.C. Cir. 2014) (quoting from Hardy Decl. filed in that case). "'FD–302s contain, in the aggregate, detailed descriptions of names, addresses, telephone numbers of witnesses and other third parties, information, leads, and other valuable investigative information supplied by various sources and third-parties interviewed jointly by the FBI and Other Government Agencies (OGAs) during the course of their investigation. In addition, responsive FD–302s contain information regarding forensic analysis, information regarding grand jury proffer and immunity statements, and information exchanged between the FBI and OGAs.'" *Id.* at 1089-90 (quoting Hardy Decl.).

[13] This Ex. M is also attached to the complaint as Ex. 1.

[14] Attached to the complaint as Ex. 2 is a letter dated March 19, 2015. Other than the date, it appears identical to Hardy's Ex. N.

[15] Exemption (b)(7)(D) was later withdrawn by the FBI. (Hardy Decl. n. 2 at 355.)

[16] There is nothing in this record to suggest that the November 2015 release of records had anything at all to do, timing wise, with the August 2015 filing of this lawsuit.

were sealed court documents not available for release. Finally, the letter advised of a right to appeal and the method for doing so. This release of documents was at no charge to plaintiff. (*Id.* ¶ 20 and Ex. O at 525.)

During the course of this litigation, at the request of the FBI and the United States Attorney's Office, the U.S. District Court for the Western District of New York lifted its sealing order covering certain records from plaintiff's criminal prosecution. As a result, the FBI determined that 55 pages of records previously withheld from the November 18, 2015 release could be processed. By letter dated June 10, 2016, the FBI made a release of all 55 pages to plaintiff in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). (*Id.* ¶ 21 and Ex. P.)

## C. Analysis

### 1. Defendant EOUSA

As a threshold matter, as already noted above, and described somewhat there, although plaintiff was directed by the magistrate judge to file a single amended complaint, and although he did file a "superseding complaint," it is still somewhat unclear who is being sued and for which FOIA requests allegedly made by plaintiff. Document No. 22, the superseding complaint, although naming several defendants in its opening paragraphs, including the FBI and EOUSA, as well as several non-agency defendants who cannot be sued under the FOIA (*see* note 1, *supra*), does not effectively marshal all the allegations set forth in the collection of documents that appears to seek recovery only against the FBI. (*See* Doc. No. 22 at 108.)[17]

---

[17] The Court acknowledges that plaintiff's pro se status entitles him to some leeway. Typically, pro se pleadings are liberally construed; but the doctrine of liberal construction is not without limits. *See, e.g.*, *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) ("the factual and legal gaps in [plaintiff's] amended complaint exceed that which we can accept through even the most liberal construction afforded pro se pleadings"); *Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008) ("the lenient treatment generally accorded to pro se litigants has limits[,] …[and

The magistrate judge correctly identified the original motion/complaint (Doc. No. 1) and two subsequent motions (Doc. Nos. 2 and 8) as constituting the sum of plaintiff's allegations. In Doc. No. 1, filed on August 14, 2015, plaintiff named as defendants the FBI, the United States Attorney General, and the United States of America. Of course, under the statute, only an "agency" is subject to suit, *i.e.*, the FBI. Plaintiff asserted that he made a FOIA request to the FBI on March 2, 2015. Document No. 2, filed on August 27, 2015, names as defendants the EOUSA, the United States Attorney, and the United States of America. The date(s) of any FOIA request(s) are not particularly clear, but he does state that he received letters initially denying a request, as well as a letter on administrative appeal remanding his request for further search. It appears that a second request for the same materials (while the first may have been pending) was unresponded to as of the date of the filing of Doc. No. 2. Document No. 8, filed on November 2, 2015, is virtually identical to Doc. No. 2, except the former includes a "jury demand." Finally, Doc. No. 22, filed on February 4, 2016, names as defendants the EOUSA and its assistant director Susan B. Gerson, the FBI and David M. Hardy, the United States Attorney General, and the United States of America. Document No. 22 inartfully lays out several more alleged FOIA requests, but does not appear to repeat any of those alleged in the earlier documents.

In their motion for summary judgment, defendants argue that, by not seeking summary judgment with respect to any purported claims against EOUSA, plaintiff has abandoned any such

---

plaintiff's] complete inattention to the merits of Defendants' summary judgment motion represents one such limit") (citation omitted); *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a pro se litigant, …[it] does not require a court to conjure allegations on a litigant's behalf[.]") (citations omitted); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (affirming dismissal where pro se litigants "were given the opportunity to remedy any deficiencies" and failed to do so).

claims[18] and, therefore, fails to state a claim against EOUSA. Plaintiff filed two opposition briefs, styled as replies. (*See* Doc. Nos. 53, 55.) In neither brief does he even mention defendants' argument regarding waiver/abandonment, much less attempt to refute it. The Court construes plaintiff's silence to mean either that plaintiff is conceding that he has stated no claims against EOUSA or that he has abandoned any claims that may have been asserted. *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25 (6th Cir. 2003) (plaintiff's failure to brief a claim in the district court is an abandonment of the claim); *see also Rugiero v. Nationstar Mortg.*, 580 F. App'x 376, 378 (6th Cir. 2014) (affirming summary judgment where plaintiff's response failed to address defendant's arguments); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in response to a motion for summary judgment).

Accordingly, summary judgment is granted in favor of defendant Executive Office for United States Attorneys. As to this defendant, plaintiff's dispositive motion (Doc. No. 47) is denied and defendants' motion for summary judgment (Doc. No. 51) is granted.

   **2.   Defendant FBI**

The FBI, relying upon the extremely detailed declaration of David Hardy submitted in support of its motion, asserts that it is entitled to summary judgment because the evidence shows that it has not improperly withheld documents from plaintiff.

---

[18] In the ordinary case, this claim of abandonment by not moving for summary judgment would be odd, since one can move for partial summary judgment. But, in FOIA cases, summary judgment is the typical way of resolving the case. Therefore, it makes sense to argue that failure to seek summary judgment is the equivalent of abandonment.

The Hardy Declaration meets the requirements for level of detail and specificity called for by all the case law cited above. In considerable detail (more detail than was even attempted by plaintiff) the declaration outlines plaintiff's FOIA requests and their treatment by the FBI.

The declaration describes in detail the FBI's Central Records System, how it is indexed, and the various methods used to search for records in general and plaintiff's records in particular.[19]

The declaration provides justification for nondisclosure of some documents requested by plaintiff, under both the Privacy Act and FOIA. It includes a chart summarizing the various categories of information shielded from disclosure, *e.g.*, information exempted by the Child Victims and Child Witnesses Rights Act; names and identifying information of FBI agents or personnel, of third parties, of underage crime victims, of federal government employees or local law enforcement employees; computer forensic reports and data; non-public law enforcement web addresses; and the FBI's internal web address. (*See* Hardy Decl. ¶ 39.) The declaration goes through each exemption and indicates how it is applied and to which of plaintiff's documents it was applied. (*See, e.g.*, Hardy Decl. ¶ 41 and n. 9; ¶ 49 and n. 11; ¶ 57 and n. 16.)

The FBI has demonstrated that documents requested have either been produced, were unidentifiable, or were exempt.[20]

Plaintiff, in his two "reply" briefs, simply repeats his assertion that the FBI has continued to wrongfully withhold forensic reports for all the computers seized from him, as well as reports

---

[19] It is important to note that "the FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980) (citation omitted). "[FOIA] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Id.* (footnote omitted).

[20] The Court notes that defendants actually went somewhat beyond the call of duty, at the magistrate judge's urging, and prevailed upon the Western District of New York to lift a sealing order so 55 pages related to his criminal prosecution could be released to plaintiff. (Hardy Decl. ¶ 21.) Defendants were under no legal obligation to undertake this extraordinary effort.

relating to his credit cards allegedly used to purchase pornographic materials involving minors. But Hardy noted in his first declaration that the reports relating to plaintiff's computers are exempt from disclosure under Exemption (b)(7)(E)-1. Hardy explains that "[p]roviding detailed information about the software, equipment, techniques, procedures, and/or types of reports generated by technicians during their forensic testing processes would impede the FBI's effectiveness in investigating crimes where evidence can be found on computers and other digital media. It would also aid in circumvention of the law by providing criminals the information necessary for them to adjust behavior in order to avoid detection, develop and/or utilize technology less susceptible to law enforcement detection or scrutiny, and/or use or develop technology to counteract techniques used by forensic computer technicians." (Hardy Decl. ¶ 57.)

With respect to plaintiff's assertion that credit card reports are being withheld, in his second declaration Hardy addressed this issue, stating: "The FBI has not withheld these documents, but in fact, is unable to locate records responsive to that specific portion of Plaintiff's request." (Hardy Decl. 2 ¶ 5.) The declaration reviews again the detailed methods of searching that were used by the FBI, which produced no responsive documents. In his "sur-reply" brief, plaintiff suggests that the FBI is now arguing "that there was never a credit card company allegation since they cannot find it." (Doc. No. 55 at 444.) He suggest that someone "is lying" because "if there was never a credit card used then the Agaent [sic] who signed [the search warrant] affidavit under penalty of perjury is guilty of perjury." (*Id.* at 445.) But the FBI has not said that credit card records or reports never existed. Rather, after again reciting the extensive steps the FBI took to search for documents responsive to this request, the FBI determined that it "was unable to locate the credit card records Plaintiff seeks." (Hardy Decl. 2 ¶ 6.)

13

Plaintiff has made no attempt to submit evidence to refute the FBI's declarations or to show any bad faith that might overcome the presumption afforded the declarations.[21] He simply steadfastly disagrees with them. That is not enough.

Accordingly, defendant FBI is entitled to summary judgment. As to this defendant, plaintiff's dispositive motion (Doc. No. 47) is denied and defendants' motion for summary judgment (Doc. No. 51) is granted.

### D.  Plaintiff's Request for Fees and Costs

In his two reply briefs, plaintiff requests attorney fees and costs pursuant to 5 U.S.C. § 522(a)(4)(E)(i), arguing that, but for this litigation, he would not have received any response to his various FOIA requests and that he has, therefore, "substantially prevailed." But, Hardy's two declarations establish that defendants have not wrongfully withheld documents from plaintiff. Therefore, plaintiff has not prevailed in any way, much less in a substantial way. The fact that defendants may have offered assistance to obtain some documents that had been previously sealed (and which he would not have had any right to obtain, absent unsealing) does not transform him into a prevailing party. Further, it is well settled that, because plaintiff is not an attorney, he cannot recover attorney fees under FOIA, in any event. *Wolfel v. United States*, 711 F.2d 66, 68 (6th Cir. 1983).

### III. CONCLUSION

For the reasons set forth herein, as well as those set forth in defendants' cross-motion and reply, plaintiff's dispositive motion (Doc. No. 47) is **denied** and defendants' cross-motion for

---

[21] Both of plaintiff's "reply" briefs simply assert, in conclusory fashion, that defendants continue to withhold certain documents. (*See* Doc. No. 53 at 430; Doc. No. 55 at 443.)

summary judgment (Doc. No. 51) is **granted**. The Court certifies that an appeal from this decision by plaintiff could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

Dated: March 23, 2017

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**